TEXTO COMPLETO DE LA RESOLUCION
Ambos recursos de Certiorari de epígrafe se refieren a la orden emitida el 13 de febrero de 2003 y notificada el 19 de febrero de 2003 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso Reading Cinemas de Puerto Rico, Inc. h/n/c CineVista Theaters v. Plaza Las Américas et. al., Civil Núm. KAC2000-4572 (902). Dicha orden declararé “no ha lugar” dos mociones de sentencia sumaria parcial presentadas por separado por los co-demandados, quienes recurrieron del dictamen mediante solicitudes de certiorari individuales que luego consolidamos. A continuación analizamos los dos recursos en conjunto.
II
Reading Cinemas, Inc., h/n/c CineVista Theaters, (en adelante CineVista), demandó el 17 de agosto de 2000 a Plaza las Américas Inc., Plaza del Caribe, S.E., Jaime Fonalledas Rubert (en adelante Plaza), varias corporaciones conocidas como Caribbean Cinemas, Víctor Carrady y Robert Carrady. Con el propósito de incluir a las Empresas Fonalledas como una de las partes demandadas, enmendó su demanda el 4 de octubre de 2000.
La demanda alega que CineVista es arrendataria de las salas de cine ubicadas en Plaza desde 1979, al convenirse entre Reading Cinema de Puerto Rico y Wometco la cesión del contrato que Plaza había suscrito con Wometco en esa fecha. 
La demanda alega que el contrato de 1979 fue posteriormente modificado y que Plaza lo incumplió al contratar con Caribbean Cinemas la operación de las ocho salas nuevas en el segundo piso del centro comercial Plaza Las Américas. También expone que Caribbean Cinemas interfirió torticeramente con el contrato entre Plaza y CineVista. Según la demanda, existe, además, una conspiración para eliminar a CineVista del mercado de cine en Puerto Rico. Por consiguiente, imputa a las co-demandas violaciones a la Ley de Monopolios, Ley Núm. 77 de 25 de junio de 1964, 10 L.P.R.A. §§ 257-274 (en adelante Ley 77), a la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. §§ 278 et. seq. (en adelante Ley 75) y a varias disposiciones del Código Civil sobre interferencia culposa con las obligaciones contractuales de terceros y deberes extracontractuales, Artículo 1802 del Código Civil, 31 L.P.R.A. §§5141 et. seq.
El 27 de junio de 2002, luego de varios incidentes procesales, Plaza solicitó que se dictara sentencia sumaria parcial desestimando las causas de acción amparadas en la Ley 77 y la Ley 75. Incluyó una declaración *1127 jurada de Gladys Torres Vega, Directora del Departamento deisÉreetídáj|jü.éntp,.^e Plaza Las Américas, Inc. y de Plaza del Caribe. CineVista presentó su oposición a la moción de sentencia sumaria el 30 de octubre de 2002. Incluyó, como anejo, los siguientes documentos: copia del contrato de 1979; una carta de Plaza fechada 4 de octubre de 1990, dirigida a Theater Acquisitions, L.P.; una carta de 7 de octubre de 1990 de Bankers Trust Company, dirigida a Theater Acquisitions, L.P.; la primera enmienda al contrato, fechada 9 de octubre de 1990 y la segunda enmienda al contrato, con fecha de 14 de julio de 1993. El 26 de diciembre de 2002, Plaza presentó su réplica a la oposición.
Cuatro meses después, el 11 de octubre de 2002, Caribbean Cinemas también presentó una moción de sentencia sumaria. En ésta, solicitó la desestimación de todas las causas de acción de la demanda basadas en su alegada interferencia con el contrato entre CineVista y Plaza. Además, incluyó dos declaraciones juradas, de Víctor Carrady y Robert Carrady, Presidente y Vicepresidente de Hato Rey Cinema Corporation, varios anuncios de periódico donde se anunciaban películas que CineVista exhibiría en estreno exclusivamente y un artículo de periódico sobre el cierre de los cines de Caribbean Cinemas ubicados en Laguna Gardens, Carolina. El 6 de noviembre de 2002, CineVista presentó su oposición a esta segunda moción de sentencia sumaria. Como anejo, incluyó la contestación de Caribbean Cinemas a un requerimiento de producción de documentos. El 22 de noviembre de 2002, Caribbean Cinemas presentó su réplica a la oposición de CineVista.
El 19 de febrero de 2003, el foro de instancia notificó una orden declarando “no ha lugar” ambas mociones de sentencia sumaria y señalando status conference.
Inconforme con lo anterior, Plaza presentó el recurso de certiorari KLCE-2003-00355, el 20 de marzo de 2003. Por su parte, el 2 de abril de 2003, Caribbean Cinemas presentó otra petición de certiorari, a la que se le asignó el código alfanumérico KLCE-2003-00577. En ambos recursos se solicita la revisión de la orden emitida por el tribunal de instancia el 13 de febrero de 2003 y notificada el 19 de febrero de 2003. El 7 de agosto de 2003 ordenamos la consolidación de los recursos y concedimos término a la parte recurrida, CineVista, para expresarse con relación a los méritos del recurso consolidado. CineVista presentó su oposición el 15 de octubre de 2003 y Plaza replicó el 30 de octubre de 2003.
La peticionaria Plaza alega que el Tribunal de Primera Instancia erró al no desestimar sumariamente la causa de acción basada en violaciones a la Ley de Monopolios y a la Ley de Contratos de Distribución. Por su parte, Caribbean Cinemas plantea que el foro de instancia erró al negarse a dictar sentencia sumaria, en ausencia de presentación por CineVista de pmeba que refute los hechos alegados en la moción de sentencia sumaria. También aduce que CineVista no cumplió con los requisitos mínimos que exige la ley para demostrar interferencia contractual. Veamos.
III
La Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que se podrá dictar sentencia sumaria sin celebrar juicio cuando no exista controversia sobre ningún hecho material. Córdova v. Larín, 2000 J.T.S. 92 (2000); PFZ Properties v. General Accident Co., 136 D.P.R. 881 (1994). Se trata de un remedio discrecional y extraordinario, puesto que si es mal utilizado, puede tener el efecto nefasto de despojar al litigante de su día en corte. Santiago Rivera v. Ríos Alonso, 2002 J.T.S. 21; Padín v. Rossi, 100 D.P.R. 259, 263 (1971); Sociedad de Gananciales v. Sociedad de Gananciales, 2000 J.T.S. 26 (2000); Roig Comercial Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990). Adviértase que el tribunal puede resolver una de las controversias del pleito mediante sentencia sumaria interlocutoria, continuando entonces el proceso en cuanto a lo demás. Regla 36.3 de Procedimiento Civil.
El Tribunal debe dictar sentencia sumariamente si las alegaciones, contestaciones a interrogatorios y admisiones ofrecidas por las partes, junto a las declaraciones juradas sometidas por éstas en apoyo de su posición, demuestran que no hay controversia sustancial sobre ningún hecho material y que lo solicitado *1128 procede,- como cuestión de derecho. Regla 36.3 de Procedimiento Civil, supra. Por tanto, cuando una parte solicite una sentencia sumaria, el análisis debe proceder en dos etapas. El juzgador; “1) deberá primeramente examinar si los hechos alegadamente controvertidos pueden considerarse medulares o centrales al pleito (o sea hechos "materiales", como expresa la Regla 36); y 2) deberá luego determinar si, en efecto, existe controversia real sobre dichos hechos. ” Jusino Figueroa v. Walgreens of San Patricio, Inc., 2001 J.T.S. 154.
Para derrotar una moción de sentencia sumaria por insuficiencia de la prueba, la parte contra la cual se presenta la moción puede demostrar que la moción es prematura, “porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o qué éste, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la sentencia sumaria. ” Medina Morales v. Merck, Sharp & Dhome Química de P.R., Inc., 135 D.P.R. 716, 734 (1994).
El Tribunal Supremo ha resuelto consistentemente que “[t]oda duda en cuanto a si hay hechos relevantes en controversia debe resolverse contra la parte que solicita la sentencia sumaria.” Jorge v. Universidad Interamericana, 109 D.P.R. 505, 512 (1980). Véase también, Corp. Presiding Bishop CJC of LDS. v. Purcell, supra, pág. 720; Valcourt Questell v. Tribunal Superior, 89 D.P.R. 827, 832 (1964); Roth v. Lugo, 87 D.P.R. 386, 392 (1963), Medina Morales v. Merck, Sharp & Dhome Química de P.R., Inc., supra, en la pág. 734. Acorde a esto, sólo procede dictar sentencia sumaria en casos que resulten claros, o sea, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. Cuadrado v. Santiago Rodríguez, supra, en la pág. 279.
El tribunal también puede utilizar su discreción para negarse a utilizar la vía sumaria en casos complejos o que envuelvan cuestiones de interés público. Corp. Presiding Bishop CJC of LDS v. Purcell, supra, en la pág. 723. Tampoco se promueve el uso del mecanismo de sentencia sumaria cuando es necesario determinar elementos subjetivos, de intención, negligencia, propósitos mentales o cuando el factor credibilidad es esencial, puesto que en estos casos es sumamente difícil que el tribunal pueda reunir toda la verdad de los hechos a través de documentos. Soto v. Hotel Caribe Hilton, 137 D.P.R. 292, 301 (1994); García López v. Méndez García, 88 D.P.R. 363, 380 (1980). En este último tipo de. Cuadrado Lugo v. Santiago Rodríguez, supra, en la pág. 279.
IV
Es evidente que para resolver en cuanto al primer error alegado por Plaza, es decir, la procedencia de la sentencia sumaria, debemos primero determinar si, en efecto, se cometieron los otros dos errores que ésta alega, a saber: que la demanda no cumple con los requisitos de la Ley de Monopolios y que el tribunal erró al no desestimar la causa de acción sumariamente por violación a la Ley de Contratos de Distribución. Veamos.
CineVista apoya su reclamación en el Artículo 4 de la Ley de Monopolios, 10 L.P.R.A. sec. 260, equivalente a la sección 2 de la Ley Sherman federal, 15 U.S.C.A. §§ 1-7. Dicho artículo establece lo siguiente:

“Toda persona que monopolice o intente monopolizar o que se combine o conspire con cualquier persona o cualesquiera otras personas con el objeto de monopolizar cualquier parte de los negocios o el comercio en el Estado Libre Asociado de Puerto Rico, o en cualquier sector de éste, será considerada culpable de delito menos grave. ”

En Pressure Vessels v. Empire Gas de Puerto Rico Progasco Inc., 137 D.P.R. 497, 508 (1994), el Tribunal Supremo explicó que uno de los propósitos primordiales de la Ley 77 es proveer una base flexible para su ejecución, mediante una norma de razonabilidad que conceda a los tribunales y a la Rama Legislativa la libertad para aplicar la ley en sentido favorable al desarrollo económico del país. Además, expresó que “[djebido a la complejidad inherente a este tipo de reclamaciones, no es aconsejable, de ordinario, desestimarlas sin proveer una oportunidad al demandante de probar su caso o, al menos, pasar por el procedimiento de descubrimiento de prueba.” Id. en la pág. 523.
*1129 CineVista hace referencia a un caso del Tribunal Supremo federal, Poller v. CBS, 368 U.S. 464 (1962), en el cual se aborda la interpretación de las secciones 1 y 2 de la Ley Sherman, que como hemos mencionado equivale a nuestra ley de monopolios. En esta decisión, el más alto foro federal se expresó como sigue:
“Summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. ” Id. en la pág. 473. (Enfasis suplido).
La peticionaria, Plaza, fundamenta su señalamiento de error en que no se dan los elementos básicos de la causa de acción de conspiración para monopolizar. De todos los elementos que señala, hace hincapié en la necesidad de probar la intención específica de monopolizar el mercado, lo cual requiere, a su vez, que sea posible adquirir poder monopolístico en el mercado relevante. CineVista alega en su demanda que el mercado relevante en este caso es el de exhibición de películas cinematográficas de estreno en Puerto Rico. Por su parte, Plaza alega que no es posible que ella adquiera ese poder monopolístico porque no es partícipe de ese mercado.
En su oposición a la expedición del auto de certiorari, CineVista expone que el procedimiento de descubrimiento de prueba con relación a Plaza aún no se ha iniciado, puesto que ésta no ha contestado el pliego de interrogatorios y solicitud de producción de documentos, no obstante haber transcurrido dos años desde.que le fueron notificados. Alega también que la Ley de Monopolios contiene elementos de intención que deben analizarse en un juicio en su fondo. Además, aduce que este caso particular incide en el desarrollo económico de Puerto Rico, y es, por tanto, de interés público, puesto que una de las partes demandadas posee el control de los centros comerciales de mayor importancia en nuestro país.
Como segundo error, Plaza plantea que el Tribunal debió haber dictado sentencia sumaria en cuanto a la alegada violación a la Ley de Contratos de Distribución. Aduce que no hay controversia de hecho en cuanto a que la relación contractual entre Plaza y CineVista es una de arrendador-arrendatario y que tampoco existe una relación de franquicia entre ellos. Plaza alega que no se puede considerar a Cine Vista como distribuidora de Plaza, porque CineVista no distribuye el producto de Plaza que, según ésta afirma, consiste de propiedad comercial para ser arrendada. Añade que en sus centros comerciales no se venden productos ni se rinden servicios que sean suministrados por Plaza. Además, según Plaza, CineVista no logró derrotar la moción de sentencia sumaria porque no presentó ningún documento ni declaración jurada para controvertirla y basó su oposición en meras alegaciones. La moción de sentencia sumaria presentada por Plaza incluyó una declaración jurada de Gladys Torres Vega, Directora del Departamento de Arrendamiento de Plaza Las Américas Inc. y de Plaza del Caribe, S.E., quien sostiene, en esencia, que el contrato entre Cine Vista y Plaza es de arrendamiento y no de franquicia ni distribución.
CineVista arguye que la etapa en la que se encuentra el procedimiento no es la más adecuada para considerar esta alegación y que la decisión de instancia no es contraria a derecho. Alega que su reclamación requiere determinar los planes de Plaza sobre el desarrollo de los servicios de alimentos y entretenimiento en sus centros comerciales, con el fin de delinear su rol como principal y franquicitario según requiere la Ley 75. En este aspecto, expone que Plaza ha incorporado espacios de cine en sus planes de expansión y desarrollo durante más de tres décadas. Solicita que deneguemos la solicitud y devolvamos este caso con instrucciones para pautar un descubrimiento de prueba.
Aunque a primera vista los errores alegados por Plaza parecen presentar controversias de derecho, la realidad es que están tan ligados a numerosos planteamientos de hechos pertinentes a la demanda que no nos es posible resolverlos en esta etapa. En específico, la alegación de violación a las leyes de monopolios y contratos de distribución involucra asuntos sobre la relación de Plaza y CineVista que todavía no están completamente aclarados. Resulta evidente que para definir la relación entre ambos, es necesario hacer determinaciones sobre *1130 hechos que están aún en controversia, que no pueden resolverse mediante sentencia sumaria.
V
Pasemos ahora a examinar los errores presentados en el recurso de certiorari del peticionario Caribbean Cinemas, a saber, que debió haberse dictado sentencia sumaria, ante la ausencia de prueba de parte de CineVista y que dicha parte no cumplió con los requisitos mínimos de la acción de daños por interferencia culposa con obligaciones contractuales de terceros.
Como norma general, para derrotar una solicitud de sentencia sumaria, la parte que se opone tiene que presentar declaraciones juradas y documentos que contradigan los hechos que la parte promovente ha presentado en su moción. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986). Sin embargo, “el sólo hecho de no haberse opuesto con evidencia que controvierta la presentada por el promovente no implica que necesariamente proceda la sentencia sumaria o que el promovente tenga derecho a que se dicte a su favor.” Id. Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983). Además, al momento de considerar los méritos de la petición de sentencia sumaria el Tribunal puede analizar todos los documentos que consten en autos aunque no sean parte de la solicitud. Conde del Valle v. Tribunal Superior, 102 D.P.R. 18, 20 (1974), Padín v. Rossi, 100 D.P.R. 259, 264 (1971).
Por otra parte, la acción por interferencia culposa con las obligaciones contractuales de terceros está cobijada por el Artículo 1802 del Código Civil, 31 L.P.R.A. §5141. Esta modalidad del Artículo 1802 fue reconocida en General Office Products v. A.M. Capen's Sons, 115 D.P.R. 553 (1984), y aplica a pactos de exclusiva. Dolphin International of P.R. v. Ryder Truck Lines, Inc., 127 D.P.R. 869, 876 (1991).
Los cuatro requisitos necesarios para prevalecer en una reclamación de interferencia contractual son:
“En primer término, debe existir un contrato con el cual interfiera un tercero. Si lo que se afecta es una expectativa o una relación económica provechosa sin que medie contrato, la acción no procede, aunque es posible que se incurra en responsabilidad bajo otros supuestos jurídicos. En segundo lugar, debe mediar culpa. Adoptamos la posición mayoritaria de que basta a tal efecto con que el perjudicado pruebe o presente hechos que permitan inferir que el tercero actuó intencionalmente, con conocimiento de la existencia del contrato. El tercer elemento es que se ocasione un daño al actor, y el cuarto, que ese daño sea consecuencia de la actuación culposa del tercero. ” General Office Products v. A.M. Capen's Sons, Inc., supra, en las págs. 558-559.
Estos cuatro requisitos poseen carácter copulativo, Dolphin International of P.R. v. Ryder Truck Lines, Inc., supra, en la pág. 879: “De ordinario, la interferencia culposa presupone el conocimiento de la existencia del contrato y el derecho del perjudicado, o al menos de los hechos que lleven a un hombre prudente y razonable a creer que dicha relación existe. ” Id. en la pág. 883.
VI
Caribbean Cinemas presentó su moción de sentencia sumaria parcial acompañada de dos declaraciones juradas, de Víctor Carrady y Robert Carrady, Presidente y Vicepresidente de Hato Rey Cinema Corporation. En síntesis, éstos declararon que, según su conocimiento, no ha existido ni existe ningún contrato entre Plaza y CineVista para operar los cines que Caribbean Cinemas opera actualmente en el segundo piso del centro comercial Plaza Las Américas. También declararon que a pesar de que no conocen los términos del contrato, éste, a su entender, no incluye términos de exclusividad.
Por su parte, CineVista se opuso a la petición de sentencia sumaria, alegando que el proceso judicial se encontraba en una etapa muy temprana, que el caso requería determinaciones en cuanto a la intención y percepción de las partes y que el descubrimiento de prueba apenas comenzaba. Acompañó su moción con la contestación al primer descubrimiento de prueba sometido por CineVista a Caribbean Cinemas, en la que éste *1131 objetaba la mayoría de los requerimientos. CineVista solicitó al tribunal que “en la alternativa de que no se deniegue la moción de sentencia sumaria, (...) se le provea a la parte demandante la oportunidad de oponerse a los méritos de la moción del Grupo Caribbean Cinemas, una vez culmine el descubrimiento de prueba en el caso. ”
Aunque no sometió una declaración jurada que refutara las declaraciones que había presentado Caribbean Cinemas, CineVista explica en su oposición a la moción de sentencia sumaria que sus reclamaciones “conciernen miles de documentos y requerirá del testimonio de decenas de testigos de hechos y periciales,’. Resolvemos que en esta etapa del litigio, la complejidad de los asuntos planteados efectivamente sostienen la necesidad de llevar a cabo descubrimiento y recibir testimonios en un juicio en su fondo. En este contexto particular, entendemos que el foro de instancia actuó correctamente al negarse a dictar la sentencia sumaria.
Para fundamentar su segundo error, Caribbean Cinemas cita los requisitos para que se configure la acción de interferencia contractual por terceros. Expone que no hay evidencia para demostrar la existencia del contrato de 1979 entre CineVista y Plaza, según modificado, como tampoco el conocimiento de Caribbean Cinemas sobre la existencia de dicho contrato ni las pérdidas y daños alegados. En su moción de sentencia sumaria, Caribbean Cinemas también argumentó que la ley sobre reclamaciones por interferencia contractual requería “un contrato por escrito.” Aunque no alude a este argumento en su solicitud de certiorari, debemos señalar que no se requiere un contrato escrito, sino que exista un contrato y no una mera expectativa o relación económica provechosa. En cuanto a esto, CineVista reitera el argumento de que el caso se encuentra aún en una etapa temprana, que no se ha completado el descubrimiento de prueba y que es necesario hacer determinaciones sobre la intención y percepción de las’partes.
Aunque las alegaciones de por sí no derrotan una moción de sentencia sumaria, debemos acudir a las mismas para el entendimiento cabal del caso que examinamos. Básicamente, en su demanda, CineVista alega que las conversaciones, las representaciones entre las partes y los miles de documentos que se enviaron mutuamente, junto con los contratos ya existentes, constituyen la modificación al contrato de 1979 y que en septiembre de 1999 estaban culminando las negociaciones para otorgarle a CineVista el manejo de las nuevas salas de cine. También expone en su demanda que invirtió miles de dólares en proyectos dirigidos a las nuevas salas de cine y que en todo momento Plaza le indicó que el contrato para administrar dichas salas sería para CineVista exclusivamente.
Resulta evidente que la existencia de este contrato es, precisamente, la controversia cardinal en el caso de marras. Resolvemos que aún existen dudas sobre este hecho que es medular a la reclamación de CineVista y que debe dilucidarse en vista evidenciaría. Por tanto, tampoco se cometió el segundo error alegado por Caribbean Cinemas.
VII
El caso que hoy examinamos es uno de gran complejidad que involucra asuntos de interés público y requiere determinar elementos subjetivos de intención y credibilidad, además de que se encuentra en una etapa prematura de descubrimiento de prueba. Por otra parte, de haberse declarado con lugar las mociones de sentencia sumaria parcial, el efecto práctico hubiera sido la desestimación de plano de las reclamaciones que presenta la recurrida CineVista.
En repetidas ocasiones nuestro Tribunal Supremo nos ha alertado sobre el peligro de que la sentencia sumaria prive al demandante de su día en corte. Cónsono con lo anterior, resolvemos que el foro de instancia no abusó de su discreción al denegar las mociones de sentencia sumaria presentadas por los peticionarios-demandados.
Por las razones expuestas, se deniega el auto de certiorari solicitado en ambos casos.
*1132 Lo ordenó y manda el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau
Secretaria General
ESCOLIO 2004 DTA 63
1. El contrato de 1979 fue cedido en 1990 a Theater Acquisitions of P.R. Al éste fusionarse con Reading Cinemas de Puerto Rico, Inc. en 1994, Cine Vista se convirtió en arrendataria y operadora de las salas de cine objeto del contrato de arrendamiento.