El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
Este recurso nos brinda la oportunidad de expresarnos sobre el procedimiento que debe seguirse para hacer cum-plir una orden o resolución del Departamento de Asuntos del Consumidor (DACo). En específico, debemos determi-nar lo siguiente: (1) si la parte beneficiada por una resolu-ción de DACo puede acudir directamente al Tribunal de Primera Instancia mediante una demanda para solicitar la puesta en vigor de la resolución y, de contestar en la afir-mativa, (2) qué remedios procesales tiene disponible esa parte para hacer que se cumpla la resolución de DACo. Por los fundamentos expuestos a continuación, contestamos la interrogante en la afirmativa y pautamos el alcance de los remedios disponibles. Así pues, confirmamos la denegato-ria del Tribunal de Apelaciones de expedir el auto de certiorari.
I
En abril de 2003, el Sr. Ramón Ortiz Matías y la Sra. Ivette Figueroa Figueroa adquirieron de Mora Development Corp. (Mora) una vivienda en Carolina, Puerto Rico. Dos años más tarde, presentaron una querella ante DACo contra Mora, Builders Unlimited, Inc. (Builders) y United Surety & Indemnity por vicios de construcción. En la que-rella solicitaron que se corrigiera una serie de defectos en la residencia. A raíz de la querella, el 9 de mayo de 2005, personal de DACo llevó a cabo una inspección de la resi-dencia y rindió un Informe de Inspección (Informe) en el que se detallaron varios de los defectos alegados en la que- *652 relia que no habían sido corregidos hasta el momento. El Informe no fue impugnado por ninguna de las partes.
Así las cosas, el 25 de agosto de 2006 —notificada el 6 de septiembre de 2006— DACo emitió una resolución en la cual responsabilizó solidariamente a las partes querelladas. Ordenó que en un término de 60 días se ins-talaran unos topes de cerámica en la cocina, enchaparan las paredes de los baños y corrigieran los demás defectos reclamados por los querellantes. En la Resolución también se les apercibió que de incumplir con lo ordenado, DACo podría imponer una multa administrativa de hasta diez mil dólares y tomar la acción legal correspondiente para su cobro. Señalaba, además, que el pago de dicha multa no les relevaba del cumplimiento con lo ordenado y que DACo solicitaría el auxilio de los tribunales para hacer cumplir la resolución. Finalmente, se les advirtió del derecho a solici-tar la reconsideración y revisión judicial.
En vista de lo anterior, Mora y Builders presentaron un escrito de revisión ante el Tribunal de Apelaciones. Dicho foro, mediante sentencia de 25 de abril de 2007, confirmó la resolución dictada por DACo. Oportunamente, acudie-ron ante nos mediante una petición de certiorari, que de-claramos “no ha lugar”.
Luego de advenir final y firme la resolución de DACo, la parte querellante suscribió una carta a los querellados so-licitando información sobre cómo cumplirían la orden de DACo. Producto de esto, Builders se reunió con los quere-llantes el 6 de junio de 2008 pero no pudieron llegar a un acuerdo. En cartas posteriores, Builders les expresó su in-tención de cumplir solamente con aquello que le correspon-día como constructora de la residencia. Esto a pesar de que la orden de DACo establecía que Builders y Mora eran res-ponsables solidariamente por los defectos. Por otra parte, está en controversia las gestiones, si alguna, que hizo Mora para corregir los defectos y cumplir con la orden de DACo.
*653 El 24 de abril de 2009, el señor Ortiz Matías, la señora Figueroa Figueroa y la Sociedad Legal de Gananciales compuesta por ambos, presentaron una demanda ante el Tribunal de Primera Instancia en contra de Mora y Builders, solicitando la ejecución de la resolución de DACo. Para esto requirieron el pago de $48,000 por los defectos —según lo cotizado por un contratista independiente — , más $15,000 en concepto de mudanza por dos semanas en lo que se corrigieran los defectos.
La parte demandada presentó una Moción de Desesti-mación, en la que argumentó que la parte demandante se había negado en varias ocasiones a que se le corrigieran los defectos en su residencia. Adujeron también que la de-manda buscaba relitigar asuntos adjudicados por DACo, por lo que procedía la aplicación de la doctrina de cosa juzgada e impedimento colateral por sentencia, puesto que, según ellos, la parte demandante debió haber traído a la atención de DACo la forma como se debían corregir los defectos. Por último, adujeron que lo que procedía era que DACo compareciera al tribunal mediante una Petición para Hacer Cumplir Orden, y no los querellantes mediante una demanda de ejecución. El foro primario dictó una re-solución mediante la cual denegó la Moción de Desestima-ción y ordenó la designación de un perito de DACo para que lo orientara sobre la mejor manera de corregir los defectos. La parte demandada solicitó la reconsideración, la que fue declarada “no ha lugar”.
Inconforme, la parte demandada presentó un recurso de certiorari ante el Tribunal de Apelaciones. El foro interme-dio denegó la expedición del recurso mediante una resolu-ción notificada el 7 de septiembre de 2011. Aún inconforme, acudieron oportunamente ante nos, reiteraron sus argu-mentos y solicitaron que revoquemos la resolución del Tribunal de Primera Instancia que declaró “no ha lugar” la Moción de Desestimación y que desestimemos la demanda de epígrafe.
*654 El 23 de enero de 2012 expedimos el recurso de certiorari. Luego de transcurrido el término reglamentario para que la parte recurrida presentara su alegato, le con-cedimos un término final de diez días para que compareciera. Esta no lo hizo, por lo que el caso quedó sometido sin el beneficio de su comparecencia.
II
A. Moción de desestimación
La Regla 10.2 de Procedimiento Civil permite a la parte demandada solicitar que se desestime la demanda presentada en su contra cuando la parte demandante deja de exponer una reclamación que justifique la concesión de un remedio. 32 L.P.R.A. Ap. V. Ante una moción de desestimación, los tribunales deben dar por ciertas y buenas todas las alegaciones bien hechas aseveradas en la demanda que hayan sido aseveradas de manera clara. Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 935 (2011); Torres, Torres v. Torres et al., 179 D.P.R. 481, 501 (2010); Roldan v. Lutrón, S.M., Inc., 151 D.P.R. 883, 891 (2000). Así pues, las alegaciones de la demanda se deben interpretar conjuntamente, liberalmente y de la manera más favorable para la parte demandante. Asoc. Fotoperiodistas v. Rivera Schatz, supra. En fin, para que proceda una moción de desestimación tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497, 505 (1994).
B. Doctrina de cosa juzgada
El Art. 1204 del Código Civil codifica la doctrina de cosa juzgada y dispone, en lo pertinente, lo siguiente:
*655 Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los liti-gantes y la calidad con que lo fueron. 31 L.P.R.A sec. 3343.
Esta doctrina persigue poner fin a los litigios luego de que los tribunales los adjudiquen de forma definitiva y, de este modo, garantizar la certidumbre y la seguridad de los derechos declarados mediante una resolución judicial. Así se evitan gastos adicionales al Estado y a los litigantes. Presidential v. Transcaribe, 186 D.P.R. 263 (2012); S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 D.P.R. 133, 153-157 (2011); Worldwide Food Dis., Inc. v. Colón et al., 133 D.P.R. 827, 833-834 (1993).
Al aplicar la doctrina de cosa juzgada se busca que se finalicen los pleitos y no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. Fonseca et al. v. Hosp. HIMA, 184 D.P.R. 281 (2012); P.R. Wire Prod. v. C. Crespo & Assoc., 175 D.P.R. 139 (2008). No obstante, su aplicación no procede de forma inflexible y automática si hacerlo derrota los fines de la justicia o las consideraciones de orden público. Fonseca et al. v. Hosp. HIMA, supra. Para que se configure la presunción de cosa juzgada debe concurrir la más perfecta identidad de cau-sas, cosas, partes y la calidad en que lo fueron. Worldwide Food Dis., Inc. v. Colón et al., supra.
C. Procedimiento de ejecución de órdenes administrativas
Es norma reiterada que las agencias administrativas carecen del poder coercitivo que tienen los tribunales para exigir el cumplimiento de órdenes y resoluciones. Srio. D.A.C.O. v. Comunidad San Jose, Inc., 130 D.P.R. 782, 795 (1992). Por tal razón, la ley habilitadora de DACo, Ley Núm. 5 de 23 de abril de 1973, (3 L.P.R.A. sec. 341 et seq.) (Ley Núm. 5), reconoce a esta agencia el derecho de *656 acudir a los tribunales para poner en vigor sus decisiones. Así pues, el Secretario del DACo puede: “[i]nterponer cua-lesquiera remedios legales que fueran necesarios para ha-cer efectivos los propósitos de este capítulo y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento”. 3 L.P.R.A. sec. 341e(i).
De igual forma, la Ley Núm. 5 establece que “[e]l Secretario [de DACo] podrá recurrir al Tribunal de Primera Instancia de Puerto Rico en solicitud [de] que se ponga en vigor cualquier orden de cesar y desistir por él emitida o cualquier orden correctiva. El incumplimiento de una orden judicial declarando con lugar tal solicitud constituirá desacato al tribunal”. 3 L.P.R.A sec. 341Z(e). Por otro lado, este Tribunal ha reconocido que, al igual que el Secretario de DACo, la Junta de Directores de un edificio sometido al régimen de propiedad horizontal puede presentar en los tribunales una petición para obligar el cumplimiento de una orden o resolución emitida por la agencia administrativa. Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 231-232 (1994).
Este procedimiento de ejecución de orden no debe ser confundido con el procedimiento de revisión judicial. Ind. Cortinera Inc. v. P.R. Telephone Co., 132 D.P.R. 654, 664 (1993). Durante la revisión judicial, el tribunal revisa la determinación de la agencia administrativa mientras que en la ejecución de orden, este implanta la determinación administrativa una vez adviene final y firme, sin pasar juicio sobre su corrección. Ind. Cortinera Inc. v. P.R. Telephone Co., supra. Esto responde a que una querella administrativa consiste de dos etapas. En la primera, el trámite ante la agencia se rige por las secciones sobre procedimientos adjudicativos de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sees. 2151-2170 (L.P.A.U.), y por la ley orgánica de la agencia. Durante esta etapa se investiga *657 la querella, se determinan los hechos que la originaron y, de haber una controversia adjudicable, se concede el reme-dio que proceda en derecho. La parte afectada por la deci-sión administrativa, entonces, puede acudir al Tribunal de Apelaciones en revisión judicial de acuerdo con los térmi-nos y requisitos dispuestos en la L.P.A.U., 3 L.P.R.A. sees. 2171-2177, y en la ley habilitadora de la agencia. Una vez concluido el proceso de revisión judicial, la decisión del ente administrativo adviene final y firme.
Es entonces que comienza la segunda etapa del procedimiento: la ejecución de la determinación administrativa. En este proceso, la agencia administrativa o la parte favorecida por la decisión administrativa solicita al tribunal que ponga en vigor la resolución u orden. El foro primario tiene disponible todos los mecanismos de ejecución de sentencia que proveen las Reglas de Procedimiento Civil, el desacato y la acción en cobro de dinero para hacer cumplir las determinaciones. Srio. D.A.C.O. v. Comunidad San José, Inc., supra, págs. 811-812; Pérez Colón v. Cooperativa de Cafeteros, 103 D.P.R. 555, 557-560 (1975). Es decir, los tribunales están facultados para poner en vigor y ordenar la ejecución, por la vía procesal ordinaria, de una resolución u orden de una agencia administrativa, así como para conceder cualquier otro remedio que estime pertinente ante el incumplimiento de sus órdenes. Srio. D.A.C.O. v. Comunidad San José, Inc., supra, págs. 811—812. A pesar de esta facultad de los tribunales, el proceso de ejecución de una orden o resolución administrativa no debe convertirse en un ataque colateral a la decisión ni en un método alterno de revisión judicial.
III
Conforme a la normativa antes expuesta, procedemos a resolver. Según examinado, una demanda no debe ser des-estimada a menos que surja que el demandante no tiene *658 derecho a remedio alguno, independientemente de los he-chos que puedan ser probados en apoyo a su reclamación. En el caso de autos, la parte peticionaria sostuvo en su Moción de Desestimación que los recurridos no podían acu-dir al Tribunal de Primera Instancia, que era DACo quien debía acudir al foro primario mediante una Petición para Hacer Cumplir Orden. Adujeron, además, que aplica la doctrina de cosa juzgada, ya que la controversia sobre cómo corregir los defectos de construcción está íntima-mente relacionada con la controversia sobre la existencia de tales defectos, de manera que debió haber sido presen-tada y litigada ante el foro administrativo.
Esta posición es inmeritoria. Por un lado, tanto DACo como la parte querellante podían acudir al foro judicial por haber culminado el trámite administrativo en virtud de la resolución que advino final y firme. La facultad del Secretario de DACo para recurrir a los tribunales y solicitar la puesta en vigor de cualquier orden o resolución administrativa es potestativa, no exclusiva, por lo que no limita el derecho de la parte beneficiada por una determinación administrativa de hacer lo mismo. Junta Dir. Cond. Montebello v. Fernández, supra, pág. 232. Así pues, el foro de primera instancia tenía jurisdicción para atender la demanda de ejecución presentada.
Por otro lado, una simple lectura de la demanda de-muestra que la parte querellante no busca relitigar asun-tos ya adjudicados; por el contrario, solicita el auxilio del tribunal para poner en vigor la resolución. El proceso de revisión judicial que le asiste a las partes culminó de ma-nera favorable para la parte recurrida, por lo que la deter-minación administrativa en donde se le impuso responsa-bilidad solidaria a los codemandados es final y firme. La demanda no presenta una nueva reclamación contra los peticionarios ni busca atacar colateralmente la resolución de DACo. Se trata, pues, de un procedimiento análogo al de ejecución de sentencia.
*659 En vista de lo anterior, resta poner en vigor el mandato administrativo a través del foro judicial. Para esto, según examinado, el foro de primera instancia posee una amplia jurisdicción que le permite implantar cualquier remedio que estime pertinente ante el incumplimiento por Mora y Builders de la resolución que DACo emitió. Srio. D.A.C.O. v. Comunidad San José, Inc., supra, págs. 811-812. Hoy resolvemos que esa potestad no se limita a las órdenes de DACo en controversias al amparo de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291 et seq. Esto es lógico ante la jurisdicción general que posee el Tribunal de Pri-mera Instancia. Por tal razón, el Tribunal de Apelaciones concluyó acertadamente que la determinación tomada por el Tribunal de Primera Instancia de denegar la Moción de Desestimación y continuar con los procedimientos no ame-ritaba su intervención.
En vista de ello y por los fundamentos que anteceden, se confirma la Resolución del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.